UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

Criminal Action No. 3:09-CR-233-3
Civil No. 3:12-cv-362

CARLOS DAILEY

## MEMORANDUM OPINION

THIS MATTER is before the Court on *pro se* Petitioner, Carlos Dailey's Motion Under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255

Motion") (ECF No. 194). For the reasons stated below, the Court DENIES Petitioner's Motion.

## BACKGROUND

Petitioner was indicted on July 20, 2009 along with four co-conspirators. The

indictment charged Petitioner with one count of conspiracy to distribute a controlled

substance—cocaine base (commonly referred to as "crack") ("Count One"), one count of

distribution of a controlled substance—cocaine base ("Count Seven"), and one count of

possessing a firearm in furtherance of a drug trafficking crime ("Count Eleven"). Petitioner was

arrested on or about September 3, 2009, and John March Jr. was appointed as counsel for

Petitioner.

On September 15, 2009, Petitioner pled not guilty to all counts and requested a jury trial.

Trial date was set for November 12, 2009. In preparation for trial, March received discovery

materials and a plea offer from the Government. *See* March Aff. ¶ 4-5, Oct. 24, 2012 (ECF 214-

4). The plea offer would have allowed Petitioner to plead to criminal information charging the

reduced crime of conspiracy to distribute and possess with the intent to distribute five grams or

more of crack cocaine base, with an agreed upon drug weight of at least 500 grams, but less than

two kilograms. *Id.* at ¶ 5. Additional terms of the plea agreement offered included Petitioner's

waiver of appeal, Petitioner's agreement to cooperate with the Government, the Government's agreement to dismiss the indictment, and the Government's agreement not to further prosecute Petitioner for any crimes set forth in the indictment. There was no agreement as to an actual sentence to be imposed, nor was there an agreement as to whether a two-point firearm enhancement would apply at sentencing. *Id.* March met with Petitioner several times to discuss the case, and encouraged Petitioner to accept the plea, but Petitioner made it clear to March that he would not accept the offer, going so far as to threaten to choke March, apparently in response to March advising Petitioner to accept the plea offer. *Id.* at ¶ 7; Pet.'s Reply to Gov't's Resp. 2 (ECF No. 217) [hereinafter "Pet.'s Reply"]. As a result, March attempted to solicit Petitioner's aid in preparing for trial; however, Petitioner became annoyed and refused to help March in the trial preparations. March Aff. ¶ 7-8.

On November 9, 2009, March filed a motion to withdraw at Petitioner's counsel. The Court granted the motion and appointed James Nachman as counsel for Petitioner. Subsequently, the trial was rescheduled for January 26, 2010. Following the arrest of Mark Dicks, the last co-defendant in the case, the Court continued Petitioner's trial until March 30, 2010 in order to hold a joint trial with Dicks and Petitioner. Order Granting Mot. for Continuance, Jan. 22, 2010 (ECF No. 57).

On January 26, 2010, Petitioner appeared before the Court for a status hearing. In addition to confirming Nachman's availability and formally setting the trial date for March 30, 2010, the Court heard a request from Petitioner, through counsel, for a bench trial. Nachman presented a waiver of jury trial form signed by himself and Petitioner. Hr'g Tr. 3:1-20, Jan. 26, 2010 (ECF No. 205). Nachman informed the Court that Petitioner told March that he wanted a bench trial, and he continued to want a bench trial. *Id.* The Court informed Petitioner that he was not entitled to a bench trial and that the Government would have to sign the waiver. *Id.* at 3:15-17. The Government told the Court that if Dicks chose a non-trial disposition of his case, the Government would reconsider signing the waiver. *Id.* at 4:20-24.

Following a plea by Dicks, the Government signed Petitioner's waiver of trial by jury, and the waiver was entered on March 29, 2010. The next day, a bench trial was held; Petitioner was found guilty on the conspiracy and distribution charges, but found not guilty on the firearm charge. Petitioner motioned the Court for reconsideration, which the Court denied on May 27, 2010.

Following the preparation of the presentence investigation report ("PSR"), Petitioner filed objections to the report and motioned for a downward departure and variance sentence. Petitioner objected to the calculation of the drug weight and the two-level enhancement based on the PSR's finding that he possessed a firearm in connection with his drug possession and distribution. Petitioner requested a variance due to the crack cocaine/powder cocaine sentencing disparity. Petitioner requested a downward departure based on an overrepresentation of his criminal record. Following a hearing, the Court entered a sentence of 268 months on Count One and 240 months on Count Seven, to be served concurrently, along with a term of five years supervised release. Hr'g Tr. 27:24- 28:5, July 20, 2012 (ECF No. 147). The Court denied the objection to the drug weight, sustained the objection to the possession of a firearm enhancement, denied the downward departure, and considered the disparity in the crack cocaine and powder cocaine sentencing guidelines, sentencing him at the lower end of the guideline range despite the Court's belief that Petitioner's criminal history supported a sentence at the high end of the guideline. *Id.* at 26:3- 27:21.

Petitioner appealed his sentence, contending the Court erred in declining to vary downward based on the sentencing disparity. *See United States v. Dailey*, 417 F. App'x 374, 375 (4th Cir. 2011). The Fourth Circuit held that the "sentence is procedurally and substantively reasonable and that the district court did not abuse its discretion in declining to vary downward." *Id.* Subsequent to his appeal, Petitioner filed a motion for a reduction of his sentence based on the retroactive amendment to the crack sentencing guidelines. On April 4,

2012, this Court granted the motion and reduced Petitioner's sentence from 268 months to 240 months.

Petitioner now seeks relief under 28 U.S.C. § 2255 ("§ 2255"). In his motion, Petitioner raises one ground warranting such relief: ineffective assistance of counsel based on counsels' alleged failure to allow Petitioner to take a plea offer for fifteen years or less. In his memorandum in support of his motion, Petitioner lays out two bases for finding counsels' assistance ineffective: (1) deficient plea agreement advice; and (2) improper advice to take a bench trial. The Government responded in opposition to Petitioner's § 2255 Motion. Petitioner filed a reply to the Government's response, repeating and clarifying claims alleged in his opening memorandum, and also alleging that his attorneys never informed him of a plea offer that did not require his cooperation with the Government. Accordingly, the matter is now ripe for decision.

## LEGAL STANDARD

Under § 2255, a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255; *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999).

Ineffective assistance of counsel claims under the Sixth Amendment are examined under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prevail on an ineffective assistance claim, a petitioner must show: (1) his attorney's performance fell

below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Id.* The measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A court must consider "the practical limitations and tactical decisions that counsel faced" when making an ineffective assistance of counsel determination. *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks omitted). A determination need not be made concerning the attorney's performance if it is clear that no prejudice resulted. *See id.* at 697. To demonstrate actual prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.

A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). Therefore, the Court generously interprets Dailey's fact allegations and legal contentions.

## DISCUSSION

### 1. Ineffective Assistance of Counsel with Respect to Plea Offers

Petitioner first alleges that each of his attorneys counseled him to reject pleas from the Government based on the possibility of obtaining an acquittal due to the poor credibility of two Government witnesses or a lesser sentence after trial based on a potential reduction of the crack sentencing guidelines to a 1:1 ratio for crack compared to cocaine powder. Petitioner also alleges that both attorneys failed to inform him of plea offers from the Government that did not require Petitioner's cooperation. Petitioner claims these actions constitute deficient performance, and argues he was prejudiced, because he would have accepted a plea deal that would have resulted in a sentence seven years less than his actual sentence but for the advice of counsel. Because

Petitioner's attorneys' performances were neither deficient nor prejudicial, this claim must be DENIED.

In *Lafler v. Cooper*, the Supreme Court held that defendants have a right to effective assistance of counsel during the plea-bargaining process, which includes counsel's advice that leads to an offer's rejection. 132 S. Ct. at 1384-85. In a companion case, the Court also held that, as a general rule, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and the failure to communicate such offers may demonstrate ineffective assistance of counsel. *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).

Claims of ineffective assistance of counsel during plea negotiations are governed by the deficient performance and actual prejudice standards set for forth in *Strickland. Lafler*, 132 S. Ct. at 1384. In deciding an ineffectiveness claim, a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. In assessing counsel's performance in advising a defendant on a plea agreement, "the Fourth Circuit has held that the professional norms surrounding plea negotiations require defense counsel to do the following: 1) notify the client of a plea offer; 2) advise the client of the option to proceed to trial; 3) present the client with the probable outcomes of both the guilt and sentencing phases of each alternative; and 4) permit the client to make the ultimate decision." *Clark v. United States*, No. 07cr281, 2012 WL 253436, at * 2 (D. Md. Jan. 26, 2012) (citing *Jones v. Murray*, 947 F.2d 1106, 1110-11 (4th Cir. 1991)). For a petitioner to show deficient performance based on counsel's recommendation that a defendant reject a plea offer, a court must determine whether a petitioner's "trial counsel provided him gross misadvice regarding his sentencing exposure." *United States v. Merritt*, 102 F. App'x 303, 307 (4th Cir. 2004). Courts have found attorneys' guidance to be gross misadvice where there has been a large disparity between the actual sentence applied and what counsel informed the defendant was the maximum sentence he faced. *See id.*; *Evans v. Dir. of Dept. of Corrections*,

No. 3:07CV326, 2008 WL 780706, at *5 (E.D. Va. Mar. 24, 2008). Courts, however, have rejected petitioners' claims where a petitioner's own submissions made it clear that the he was aware of his sentencing exposure. *See Clark*, 2012 WL 253436, at *3.

In evaluating an ineffective assistance of counsel claim, courts must recognize the "'difference between a bad prediction within an accurate description of the law and gross misinformation about the law.'" *United States v. Lewis*, 477 F. App'x. 79, 82 (4th Cir. 2012) (citing *Ostrander v. Green*, 46 F.3d 347, 355 (4th Cir. 1995), overruled on other grounds by *O'Dell v. Netherland*, 95 F.3d 1214 (4th Cir. 1996)). In *Lewis*, the court found that the petitioner's counsel was ineffective when counsel failed to "simply read the applicable federal statutes and correctly appl[y] them to the facts" of the case. *Id.* Short of such gross misinformation, however, an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see also Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir. 1979) (differentiating between a prediction which was not realized and constitutionally ineffective counsel who failed to discover the applicable rule).

In order for a petitioner to show prejudice, he must show more than that he was sentenced to a term of imprisonment greater than he would have received if he accepted the plea deal. A petitioner must show that: (1) "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances);" (2) "that the court would have accepted its terms;" and (3) "that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler*, 132 S. Ct. at 1385. Courts are skeptical of a petitioner's after the fact claim that he was willing to plead guilty to a plea offer; thus, courts have held that "'after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or

inaction, he would have accepted the plea offer.'" *Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (alteration in original) (quoting *Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991)). The circuits are split as to what a petitioner must demonstrate to prove that he would have accepted a plea offer, with some considering a petitioner's testimony in conjunction with the disparity between the sentence offered and the sentence actually received, while others require that a petitioner must present objective evidence. *See Merzbacher v. Shearin*, 706 F.3d 356, 366 (4th Cir. 2013). *Compare Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003) (declining a requirement for objective evidence), *with Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991) (requiring some objective evidence). Without deciding whether objective evidence is required, the Fourth Circuit recently stated, "[T]o demonstrate a reasonable probability that he would have accepted a plea, a petitioner's testimony that he would have done so must be credible." *Merzbacher*, 706 F.3d at 366-67.

This Court finds that Petitioner's claims that March provided ineffective assistance of counsel during plea negotiations fail because Petitioner cannot show that March's performance was deficient. March's actions in conveying the Government's plea offer to Petitioner satisfy the requirements laid out in *Jones*. *Jones*, 947 F.2d at 1110-11. March notified Petitioner of the plea offer, discussed alternatives, discussed the merits of the case, and once it was apparent Petitioner would not take the plea, sought Petitioner's assistance in preparing for trial. March Aff. ¶¶ 7-8; Pet.'s Reply 2. In fact, Petitioner admits that March "insisted that [P]etitioner consider the cooperation deal." Pet.'s Reply 2. Therefore, it was not ineffectiveness on the part of March that led to Petitioner's rejection of the plea offer. While Petitioner may have placed significant weight in the possibility of receiving a sentence under a 1:1 crack-to-powder cocaine ratio under potential changes to the guidelines or the relative strength of two of the Government's witnesses, it is apparent from March's affidavit and Petitioner's briefs that March

effectively counseled Petitioner.[1] Accordingly, the Court finds Petitioner's plea negotiation claims against March fail because March's performance clearly "falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Similarly, the Court finds Petitioner's plea advice claims with respect to Nachman fail because Petitioner cannot show counsel's performance was deficient or that he was prejudiced by any of Nachman's actions. The Court must consider counsel's knowledge at the time and Petitioner's prior actions in determining whether the attorney's actions were reasonable. *See Strickland*, 466 U.S. at 690. Following Petitioner's threats to March and refusal to plead, Nachman had reason to be cautious about insisting that Petitioner accept a plea. Despite that knowledge, Nachman requested plea offers from the Government, and communicated with Petitioner regarding the offers.[2] Recognizing Petitioner's preference of trial over a plea, Nachman prepared for trial. He investigated the likely sentencing guidelines if Petitioner was found guilty and informed Petitioner of the guideline range. Petitioner, himself, notes that his counsel informed him of the maximum potential sentence and that he likely faced a sentence of 262 months based on trial projections. Pet.'s Reply 5. Thus, Petitioner's own submissions make

---

[1] Petitioner claims that March failed to inform him of a plea that did not involve cooperation and did not approach the Government with the information that Petitioner was interested in a deal that would not involve cooperation. Petitioner argues he had a right to offer a plea deal of his own to the Government. As an initial matter, nothing indicates the Government made Petitioner an offer that did not require cooperation during March's representation of Petitioner. March only recounts a plea offer that included cooperation, March Aff. ¶ 4, and the Government only indicates it provided a plea offer that did not require cooperation to Nachman. Gov't's Response to Pl.'s Mot. 8 (ECF No. 214). Thus, any argument Petitioner made that March's performance was deficient because he failed to present Petitioner a deal that did not require cooperation lacks support. Additionally, March did approach the United States to see if it would be willing to make a plea offer. March Aff. ¶ 5. At that time, the Government was only willing to make an offer including full cooperation. Because a defendant has no right to be offered a plea, *Frye*, 132 S. Ct. at 1410 (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)), it cannot be said that March was deficient in failing to obtain a specific type of plea offer from the Government. However, even if March's performance was deficient, Petitioner's claim still fails because, as detailed below, he cannot show prejudice.

[2] Petitioner alleges that Nachman did not inform him of all plea offers made by the Government. Specifically, Petitioner states that Nachman never informed him the Government offered an agreement that did not require him to cooperate. The only indication that Nachman did not convey the offer to Petitioner is in Petitioner's reply brief. The Government, to the contrary, indicates that Nachman made statements prior to trial indicating he conveyed both a cooperating and non-cooperating agreement to Petitioner and both were rejected by Petitioner. Regardless of whether Nachman conveyed both offers to Petitioner, Petitioner's claim fails because, as detailed below, he cannot show prejudice.

it clear he was aware of his sentencing exposure if he went to trial, as is required by the prevailing professional norms. *See Clark*, 2012 WL 253436, at *2. This figure is only slightly less than the 268 months to which this Court sentenced Petitioner. Therefore, Nachman did not grossly misadvise Petitioner as to his sentencing exposure. *See Merritt*, 102 F. App'x at 307.

Any advice Nachman gave Petitioner that he should reject an offer because there was a significant possibility of succeeding at trial or receiving a lesser sentence would constitute bad prediction, not gross misadvice and is not deficient performance. *See Lewis*, 477 F. App'x at 82. Further, the Court must be highly deferential to the trial strategy of counsel. *Strickland*, 466 U.S. at 689-90. According to Petitioner, Nachman assessed the anticipated testimony of the witnesses facing Petitioner and determined that at least two of them presented credibility issues on which the defense could capitalize. Additionally, Nachman would not have been incorrect to believe that it was possible that the Court could impose a 1:1 crack-to-powder sentencing ratio. At the time of Petitioner's trial, courts were permitted to vary from the crack guidelines based on policy disagreement, *see Spears v. United States*, 555 U.S. 261, 265-66 (2009), and the Department of Justice had recently advocated the elimination of the sentencing disparity between crack cocaine and powder cocaine, *see Restoring Fairness to Federal Sentencing: Addressing the Crack-Powder Disparity: Hearing Before the Subcomm. on Crimes and Drugs of the S. Comm. on the Judiciary*, 111th Cong. 1, 10-11 (2009) (statement of Lanny A. Breuer, Assistant Att'y Gen. of the Criminal Division, United States Department of Justice). Some courts within this state took this suggestion into consideration during sentencing; therefore, numerous defendants received sentences under a 1:1 ratio instead of the prevailing guidelines. *See, e.g., United States v. Luck*, No. 3:04-CR-00047-006, 2009 WL 2462192, at *2 (W.D. Va. Aug. 10, 2009); *United States v. Carter*, No. 6:09-cr-00006-001, 2009 WL 2578958, at *2 (W.D. Va. Aug. 18, 2009). Nothing indicates Nachman guaranteed Petitioner would not receive a sentence under the prevailing guidelines, merely that it was possible to receive a sentence under a 1:1

ratio. Finally, Nachman allowed Petitioner to make the ultimate decision as to whether to accept the plea offers or go to trial. Thus, the Court finds Nachman's performance was not deficient.

Even if Nachman's performance had been deficient as Petitioner contends, because Nachman allegedly did not present him with the Government's plea offer that did not require cooperation, Petitioner was not prejudiced because he cannot show a reasonable probability that the offer would have been presented to the court. Despite the fact the parties estimated Petitioner would have received a lesser sentence under the plea offer from the Government and there is no indication the Court would have rejected the plea offer, it is not likely Petitioner would have accepted such an offer. *See Lafler*, 132 S. Ct. at 1385 (outlining the requirements for proving prejudice after rejecting a plea offer). As noted by the Supreme Court in *Lafler*, a finding of prejudice requires a determination that the defendant would have accepted the offer and that the Government would not have withdrawn it. *Id.* Based on Petitioner's statements and actions, it is clear that he had no inclination to accept a plea deal until after he received a sentence greater than he would have received under a plea agreement.

Petitioner's claim that he would have accepted a non-cooperating deal but for his counsel's deficient performance in failing to convey such an offer is highly suspect and lacks credibility. *See Merzbacher*, 706 F.3d at 366-67. Petitioner did not raise the issue of cooperation until his reply brief, after the Government indicated it provided Petitioner with both a cooperation and a non-cooperation plea offer. Instead, in his opening memorandum, Petitioner claimed he was willing to accept an offer "as long as the offer is reasonably less than his current sentence." Not until the Government mentioned cooperation did Petitioner change his statements to indicate the cooperation portion of the Government's initial offer was the reason for declining to accept the offer. In fact, Petitioner's pretrial actions make it clear he was not inclined to accept any plea offer presented by the Government. During his time appointed to this case, March attempted to discuss the possibility of a plea agreement with Petitioner, but Petitioner unequivocally stated he was not interested in pleading guilty and later threatened

March with bodily harm. March Aff. ¶ 7. March believed this threat was in response to his continual advice that Petitioner should accept a plea offer. March Aff. ¶ 7.

Additionally, cooperation against other defendants in this case could not have been the sticking point for Petitioner because the last co-defendant in his case decided to plead guilty and the Court canceled his jury trial six days before Petitioner's trial. At that point, Petitioner's cooperation with the Government would no longer have been useful or necessary, yet Petitioner did not seek to accept the Government's previously offered plea agreement rather than proceed to trial. Based on Petitioner's actions it is unfathomable that Petitioner would have accepted any plea, regardless of the cooperation requirement, as he contends in his memorandum. The inconsistencies in Petitioner's assertions and his actions heighten skepticism toward his after the fact statement of willingness to plead. *See Berry*, 884 F. Supp. 2d at 463. These factors demonstrate that Petitioner's assertions lack credibility. *See Merzbacher*, 706 F.3d at 366-67. Obviously, Petitioner wants to "avoid spending the next twenty-two plus years in prison," Pet.'s Mem. Supporting § 2255 Motion (ECF No. 195) 7, but that alone is not reason to reverse this Court's conviction and require the Government to re-offer Petitioner a plea deal. Because it is apparent that Petitioner would not have accepted a plea offer, it is evident that consel's performance did not prejudice Petitioner. Therefore, this Court DENIES Petitioner's plea advice claims of ineffective assistance of counsel.

## 2. Ineffective Assistance of Counsel in Recommending Bench Trial

Next, Petitioner argues that his counsel provided ineffective assistance by advising him to forego a jury trial in favor of a bench trial. Because Petitioner's claim fails to satisfy either *Strickland* prong, this Court DENIES Petitioner's claim. While defendants have a constitutional right to a jury trial, there is no such guarantee for a bench trial and certain conditions must be met for a criminal defendant to obtain a bench trial. *See Singer v. United States*, 380 U.S. 24, 36-37 (1965). Under Rule 23 of the Federal Rules of Criminal Procedure, where a defendant who is entitled to a jury trial goes to trial, the trial must be by a jury unless "(1) the defendant waives

a jury trial in writing; (2) the government consents; and (3) the court approves." Fed R. Crim. P. 23(a). To ensure waiver does not violate the Sixth Amendment right to an impartial jury, "the waiver must be knowing, intelligent, and voluntary." *United States v. Boynes*, 515 F.3d 284, 286 (4th Cir. 2008).

Courts within this circuit have repeatedly held that a written waiver is sufficient evidence of a defendant's constitutional waiver of his right to a jury trial, provided it was executed knowingly and voluntarily. *See, e.g., Boynes*, 515 F.3d at 286; *United States v. Khan*, 461 F.3d 477, 492 (4th Cir. 2006); *United States v. Hunt*, 413 F.2d 983, 984 (4th Cir. 1969). A contentious relationship between a defendant and his counsel does not necessarily invalidate a voluntary waiver of one's right to a trial by jury. *Boynes*, 515 F.3d at 288 ("A knowing, intelligent, and voluntary waiver and contentious attorney-client interactions are not mutually exclusive.") For a petitioner to prove prejudice resulted in this situation, it is not sufficient for a petitioner to show that, absent counsel's advice, he would have pursued a jury trial; instead, a petitioner must show that this advice prejudiced him "in a way that 'undermine(s) confidence in the outcome.'" *United States v. Lilly*, 536 F.3d 190, 196-97 (3d Cir. 2008) (quoting *Strickland*, 466 U.S. at 694).

Petitioner's claim here, that he did not know he had any other choice but to take a bench trial, is not supported by the record. Petitioner signed a waiver of trial by jury. In this waiver, he acknowledged he had been furnished a copy of the indictment against him, he had been advised of the nature of the charges against him and the possible sentence resulting from the charges, he had been advised of his right to a trial by jury, and that he voluntarily waived trial by jury. Waiver of Trial by Jury (ECF No. 86). Furthermore, Petitioner was present in court when Nachman indicated Petitioner continued to desire a bench trial and had signed the waiver at a point when the trial was scheduled to be heard by a jury. Hr'g Tr. 3:1-12, Jan. 26, 2010. Petitioner therefore cannot claim that his adverse relationship with his attorneys led to him requesting a bench trial. *See Boynes*, 515 F.3d at 288.

Furthermore, Petitioner's submissions make it clear the decision to proceed to a bench trial was strategic, with counsel believing that the Court's familiarity with the evidence of the witnesses and the nuances of the law was more beneficial than facing a jury. The Court is highly deferential to counsel's strategic advice here. *See Strickland*, 466 U.S. 689-90. Particularly when viewed in light of the Court's ultimate acquittal of Petitioner for the firearm charge, it is clear that counsel's advice and performance were not ineffective.

Petitioner also fails to support his allegation that he was prejudiced by the decision to proceed to a bench trial. Petitioner baldly asserts that "it was less favorable to face a judge rather than a jury," Pet.'s Mem. Supporting § 2255 Motion 5, yet this claim has no basis in the law. Petitioner presents no argument in support of how he was actually prejudiced as a result of having his trial before a judge; he merely alleges that "surely this was a bad choice." *Id.* The record indicates Petitioner was not prejudiced by the decision to forego a jury trial. In fact, as noted by the Government, the Court acquitted Petitioner of the firearm charge. Thus, there is nothing on the record that would undermine one's confidence in the outcome. *See Lilly*, 536 F.3d at 196-7. Based on Petitioner's knowing and voluntary waiver of jury trial, and because the decision was not the result of deficient performance nor did it result in any prejudice, Petitioner's claim that counsel was ineffective for requesting a bench trial is DENIED.

## 3. Evidentiary Hearing

Generally, an evidentiary hearing is required under § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief. *United States v. Witherspoon,* 231 F.3d 923, 925-27 (4th Cir. 2000); *Raines v. United States,* 423 F.2d 526, 529-30 (4th Cir. 1970); *see also United States v. Guerra,* 588 F.2d 519, 521 (5th Cir. 1979) ("A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the petitioner's allegations are affirmatively contradicted by the record."). The district court must hold an evidentiary hearing when the movant "presents a colorable . . . claim showing disputed facts beyond the record and a

credibility determination is necessary in order to resolve the issue." *Witherspoon,* 231 F.3d at 925–27. Whether an evidentiary hearing is necessary is within the discretion of the district court. *Raines,* 423 F.2d at 530.

Petitioner seeks an evidentiary hearing based on the reasons he presented in his § 2255 Motion and "so that the court can determine whether petitioner would have [accepted] the plea offer." As detailed above, the record makes it clear that Petitioner was not inclined to accept any plea agreement from the United States until after he was found guilty at trial and sentenced to a longer sentence. Any after the fact testimony presented at an evidentiary hearing, asserting that Petitioner would have accepted the plea agreement would be highly suspect and would not overcome the evidence in the record of Petitioner's unwillingness to accept a plea agreement prior to trial. Accordingly, an evidentiary hearing would not change the disposition of this case, and Petitioner's request for an evidentiary hearing is DENIED.

## 4. Certificate of Appealability

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell,* 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El,* 537 U.S. at 336–38 (citing *Slack,* 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Petitioner is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

## CONCLUSION

For the reasons stated above, the Court DENIES Petitioner's § 2255 Motion and DENIES a Certificate of Appealability.

Let the Clerk send a copy of this Memorandum Opinion to Petitioner and all counsel of record.

An appropriate order shall issue.

_____ /s/ _____
James R. Spencer
United States District Judge

ENTERED this \_\_24th\_\_\_ day of April 2013.